**H. S. LEYMAN COMPANY, Appellant, v PIGGLY-WIGGLY CORPORATIONN, et al., Appellees.**

Ohio Appeals, First District, Hamilton County.

No. 6225.    Decided March 6, 1944.

Peck, Shaffer & Williams, Cincinnati, Ernst, Cassatt & Cottle, Cincinnati, and Mr. Charles W. Broeman, Cincinnati, for appellant.

Nichols, Wood, Marx & Ginter, Cincinnati, and Mr. Harry Kasfir, Cincinnati, for appellees.

## OPINION

By MATTHEWS, J.:

It is recited in the notice of appeal in this case that the plaintiff appeals on both law and fact and an appeal bond was duly filed.

At the threshold a jurisdictional question is presented. In the order appealed from it is recited that "the plaintiff is not the real party in interest and has not the right to maintain this action" and on that ground a judgment of dismissal at the plaintiff's costs was entered. As the Court found that the right of action was not owned by the plaintitff, no decision was reached as to the merits of the cause of action. No decision on the issues relating to the cause of action having been made by the common pleas court, the question is whether this Court has jurisdiction to hear and decide such issues on this appeal. For the decision of this question, it is immaterial whether the cause of action is a chancery action or otherwise. We, therefore, express no opinion on that subject.

This question was presented to the Supreme Court in LeMaistre v Clark, 142 Oh St., 1. We quote the syllabus:

"1. Under the provisions of Sec. 6, Art IV of the Constitution of Ohio the Courts of Appeals of this state have appellate jurisdiction in the trial of chancery cases.

"2. Such appellate jurisdiction does not authorize such courts to conduct a trial on issues of fact unless such a trial has been had in the court of first instance.

"3. It is not error for a Court of Appeals to dismiss an appeal on questions of law and fact and retain the appeal on questions of law alone when only a question of law has been decided by the court of first instance."

Following this pronouncement of the Supreme Court, we hold that on this appeal, this Court's jurisdiction is limited to a consideration of questions of law presented by the record, and that the case is not here for a trial de novo upon the merits of the cause of action.

This appeal is, therefore, reduced to one on law only and retained for hearing as so reduced.

(1) The defendants-appellees contend that this action is an attempt to conduct litigation by a non-existent person. The basis of this contention is that the juristic person brought into existence under the laws of the State of Ohio as the corporation, The H. S. Leyman Company, had ceased to exist prior to the institution of this action and that there was not then and is not now any such person capable of being a party to any action.

The facts are that on December 1st, 1930, the plaintiff, The H. S. Leyman Company, a corporation under the laws of Ohio, acquired the fee simple title to real estate located on Race Street in the City of Cincinnati, subject to a lease for twenty-five years to Piggly-Wiggly Stores, Incorporated, dated November 15th, 1922, at a rental of $2291.67, per month, plus taxes, insurance and other charges. This lease had been assigned to William Goebel who in turn had assigned undivided fractional interests to three other persons, and before default the title to the lease had been acquired by The Twentieth Century Bake Shop, a corporation. On the same day that it acquired the fee simple title, it in form leased, subject to existing leases, the premises to its vendor for a period of five years with the privilege of purchase at any time during the term upon sixty days notice and containing the express stipulation that the lessee therein should be entitled to the rent reserved in the existing lease on the premises.

In December, 1931, The H. S. Leyman Company entered into a contract to sell all of its assets to The Leyman Corporation excepting one item. This contract included this real estate and was completely executed during the month of December, 1931, excepting the execution and delivery of the deed for this real estate. The plaintiff received the entire consideration for the property and itself had no further contractual duty unperformed other than the delivery of the deed and as The Leyman Corporation at least impliedly requested it to delay delivery of the deed, it was not in default in that respect. Notwithstanding the withholding of the deed under these circumsances, The Leyman Corporation was placed in full control of the property.

Upon completion of this transaction, The Leyman Company owned the excepted asset, which was the stock of its subsidiary, The Midland Acceptance Corporation, and still held the bare legal title to this real estate subject to the leases. At the same time, The Leyman company was making the transfer to The Leyman Corporation, it was arranging to divest itself of the stock of The Midland Acceptance Corporation by having its stockholders surrender their stock to it and take in lieu thereof stock in The Midland Acceptance Corporation. This also was effected in December, 1931. So, by January, 1932 The Leyman Company had received from its stockholders all of their certificates, had delivered to The Midland Acceptance Corporation its certificates of stock in that corporation, and had received new stock therefrom which it had distributed to its stockholders, and had ceased to transact business and had title to no property except the bare legal title to this real estate.

Thereafter, in 1932, a default in payment of rent occurred and this action is to recover for non-payment of rent, taxes, and charges for repairs against the stockholders of Piggly Wiggly Stores, Incorporated, to whom its assets were distributed upon its dissolution, and the trustee for dissolution. It is alleged that Piggly Wiggly Corporation owned 99% of the stock of Piggly Wiggly Stores, Incorporated.

There is no claim that The Leyman Company has been formally dissolved. The claim is that because its stockholders had surrendered their stock and thereby ceased to be stockholders, an integral part essential to corporate existence was removed and thereby a surrender of its corporate charter was effected. Many cases are cited in support of this statement of the law. Proceeding from this premise, the conclusion is drawn that, as there is no legal corporation, no action can be maintained by a being that was but is not, and that no such pre-existing legal entity can be the real party in interest.

A corporation exists by force of legislative enactment. Its inception and the duration of its power are determined by law, and these laws have fluctuated in time and place. There is no uniformity now among the states on the subject. When the time approaches for its dissolution, whether it shall be struck down and divested instantly of all power, or shall be permitted to linger with diminished or diminishing powers until it sinks into innocuous desuetude is dependent on the will of its creator as expressed in legislative enactment. And who shall have the right to question its existence and the measure of its powers is likewise determined by the author of its being. In Ohio, that sovereign will is expressed in the General Corp-

oration Act (112 O. L. 9, et seq., §8623-1 et seq., GC) which became effective on June 8th, 1927.

The corporate capacity and powers of an Ohio corporation of The H. S. Leyman Company kind are defined by §8623-8 GC, and the jural status of the limitation on the exercise of such power is set forth in the last two paragraphs. These are:

"The articles shall constitute an agreement by the directors and officers with the corporation that they will confine the acts of the corporation to those acts which are authorized by the statement of purposes and within such limitations and restrictions as may be imposed by the articles.

"No limitation on the exercise of the authority of the corporation shall be asserted in any action between the corporation and any person, except by or on behalf of the corporation against a director or an officer or a person having actual knowledge of such limitation."

We think the legal effect of this enactment is correctly stated in the comment in the annotation to that section in Page's Ohio General Code, which is:

"It has been said that this section abandons the common law rule of ultra vires. It is more correct to say that it limits the field within which the defense of ultra vires may be asserted. The state may still cause forfeiture of the corporate charter for usurpation of power; shareholders may still invoke the aid of equity against threatened ultra vires acts; and recovery may still be had by, or on behalf of, the corporation, because of ultra vires acts, against directors, officers and persons having actual knowledge of the limitation of authority. Hence authorities on the doctrine of ultra vires are not obsolete in Ohio, but are applicable only in limited classes of cases."

It seems clear that the defense of ultra vires is not available to a defendant who is sued by an Ohio corporation while it is in full vigor and before it has been stricken with a mortal ailment.

Now assuming that by reason of what has happened the powers of The H. S. Leyman Company have been so weakened that it exceeds its rightful power in prosecuting this action, is that a defense to defendants, who, it is alleged became obligated to it when it was in the full vigor of its corporate existence?

Upon a voluntary dissolution in any of the ways provided by §8623-79 GC, and the filing of the certificate of such dissolution, as therein provided, it is provided by the following section (8623-80 GC) that:

"Any corporation which shall be dissolved and any corporation whose articles have been cancelled shall cease to carry on its business and shall be without authority so to do, but it shall continue for the sole purpose of paying, satisfying and discharging any existing liabilities and obligations, collecting and distributing its assets and doing all other acts required to adjust, settle and wind up its business and affairs, and it may do all such acts and may sue and be sued in its corporate name."

By §8623-82 GC, the directors are authorized to "act as a board in accordance with the regulations and by-laws of the corporation until the corporation is completely wound up— and to the extent necessary or expedient to that end, shall exercise all the powers of such dissolved corporation, and without prejudice to the generality of such authority, may fill vacancies," etc. "and do and perform all acts necessary or expedient to the winding up of the corporation."

By virtue of these sections the corporate existence is continued for the purpose of winding up and any act or expedient to accomplish that purpose is within the remaining authority.

And we are of the opinion that it is no answer to a party sued by such dissolved corporation to say that it is not necessary or expedient to sue him in order to accomplish the purpose of winding up. It is in effect and we think in law an attempt to defend on the ground of ultra vires which was abolished by §§8623-8 GC. 10 O Jur., 827. It is a collateral attack upon a corporation that has a de facto existence at least, and that is not available to a defendant. Id. 188.

If the directors are not proceeding to wind up the corporate affairs the law provides other remedies that may invoke by the state or by either stockholders or creditors.

In this case the fact that no certificate of dissolution has been filed furnishes an additional reason for holding that The H. S. Leyman Company is still a juristic being with the power to sue and capable of being the real party in interest within the meaning of that phrase as used in §11,241 GC.

(3) We come now to a consideration of whether the plain-

tiff is the real party in interest within the meaning of the law in the prosecution of this action to enforce the cause of action alleged. Perhaps as a preliminary to such consideration, it should be stated that it is admitted that prior to the contract to convey to The Leyman Corporation, the plaintiff was the owner of the fee simple title to this land and as such owned the covenant of Piggly Wiggly Stores, Incorporated, to pay rent, but that no breach had occurred, that the cause of action sued upon arose thereafter. No purpose has been assigned for leaving the legal title in the plaintiff. All that appears is that The Leyman Corporation directed plaintiff not to convey the premises to it, but to retain the title until it, The Leyman Corporation, demanded it and that no such demand had been made. It should also be said that both the plaintiff and The Leyman Corporation moved the Court that The Leyman Corporation be made a party defendant with leave to plead and the latter tendered an answer and crosspetition in which it prayed in the alternative that the plaintiff be awarded judgment on the cause of action sued upon, and, if, for any reason that could not be done under the law, then that it be awarded judgment. It was in effect a waiver of its claim in favor of the plaintiff. And finally, it should be said that the motions of plaintiff and The Leyman Corporation that the latter be made a party were filed after and as a result of the filing by the defendants of amendments to their answers, alleging a defense that the plaintiff was not the real part in interest.

A study of the cases shows that there is no uniformity of interpretation of the meaning of the phrase "the real party in interest" found in the code of the various states. Pomeroy's Code Remedies, (5th ed.) 96, et seq. The cause of this as stated by one writer is that "The problem is that this mouth-filling phrase seemed to promise so much and actually gave so little. Outside of justifying the Courts in doing away with the last vestiges of the ancient rule prohibiting assignments of choses in action and allowing the assignee to sue in his own name, this rule has added nothing—except confusion—to our principle that the substantive law determines who possess legal rights and who owe legal duties." Clark's Cases on Pleading & Procdure (2 ed) 609.

In Indiana, the phrase is interpreted to require the action to be prosecuted by the party entitled to the fruits of the action and to mean that "the bare legal title is not sufficient to constitute a plaintiff as the real party in interest." Boyd

Motor Company v Claffey, 94 Ind. App., 492, 165 N. E., 255. See, also: Bostwick v Bryant 113 Ind., 448, 16 N. E., 378.

In Minnesota, where there is the same phrase, the assignee of a chose in action for collection only was held to be qualified to maintain an action on the chose. Anderson v Reardon, 46 Minn., 185, 48 N. W., 777; Hayday v Hammermill Paper Co., 176 Minn., 315, 223 N. W. 614, 63 A. L. R., 210.

In New York, which was a pioneer in pleading reform and where, apparently, the phrase was first used, it has always been construed in the restricted sence as expressing only an intent to adopt the equitable rule as to parties plaintiff and not as establishing a new test.   Accordingly, its Courts look to the substantive law to determine the owner of the right or title, as determined by the substantive law, and if that is found in the plaintiff, his right of action upon the cause of action .is established. As was said in Spencer v Standard Chemicals and Metals Corporation, 237 N. Y., 479, 143 N. E., 651, "In other words the plaintiff must have some title, legal or equitable to the thing assigned. Hays v Hathorn, 74 N. Y., 468. If the assignee has such title it is enough.   The consideration paid, the purpose of the assignment, the use to be made of any proceeds collected is immaterial. Allen v Brown, 44 N. Y., 228; Meeker v Claghorn, 44 N. Y. 349; Sheridan v Mayors, etc., 68 N. Y., 30; Brown v Powers 53 App. Div., 251, 65 N. Y. S. 733. But legal or equitable interest he must have." The cases cited in the quotation support the New York rule that an assignee for the sole purpose of suit has title and is qualified as a plaintiff in an action to enforce the cause of action.

Contrary to this construction we find the phrase "real party in interest" as used in section 11,241, General Code of Ohio, so construed as to disqualify an assignee for suit only from maintaining an action. **Ginn v Brown, 66 Oh St.,** **316, 64 N. E., 123.** The court held in that case as stated in the syllabus that:

"1.  A contract by which several accounts against the same debtor are assigned by the holders to another termed a trustee for the purpose of having the same prosecuted for collection by suit or otherwise, and the proceeds, after payment of costs and fees of the trustee for prosecuting the action, to be paid to the assignors in proportion as the claim of each may bear to the whole sum recovered, does not constitute such assignee the real party in interest within the purview of Section 4993, Rev. Stat., so as to enable him to maintain

an action in his own name upon such accounts. Nor is he a trustee of an express trust within the meaning of Section 4995, Rev. Stat.

"2. A contract assigning several accounts for the purpose of collection which gives to the assignee (an attorney) a contingent fee depending on success, to be deducted from the proceeds of a suit to collect the accounts, which suit is to be prosecuted by him in his own name and at his own risk and cost, and which also deprives the assignors of any right to control or compromise the suit, is against public policy as champertous, and is invalid."

The Supreme Court of the United States in Titus v Wallick, 306 U. S., 282, noticed this divergence of interpretation in Ohio and New York. In that case, an assignee for suit only had obtained a judgment in New York, without disclosing the fact that he was bound to account for the proceeds to his assignor. Suit was filed on this judgment in Ohio and the defense was made that it had been obtained through fraud in not disclosing that he was obliged to account and, therefore, not the real party in interest. The Ohio Court sustained this defense and the Supreme Court of the United States granted certiorari because of the question of whether "the full faith and credit clause" of the United States Constitution had not been violated. And the Court held it had been violated, saying at p. 291, that:

"So far as the court rested its decision on its view that the New York assignment conferred no right on petitioner to maintain the suit there, it is enough as we have pointed out, that the petitioner was the real party in interest entitled to maintain the suit in New York. So far as Ohio might apply a different rule if the original cause of action were prosecuted in its courts, that fact is irrelevant to any issue now presented."

Ginn v Brown, supra, was recognized as the law of Ohio as late as 1935 in the case of **Hadden v Rowe, 130 Ohio St., 10.**

If the owner of a chose cannot transfer it for the sole purpose of enabling the assignee to enforce it by suit, it seems equally clear that an assignee cannot permit the legal title to abide in the assignor for the sole purpose of having him enforce it and account for the proceeds. It has been held that an assignor after assignment cannot maintain an action up-

on the chose. Foster v Central National Bank, 183 N. Y., 379 at 384.

So we hold that the plaintiff as the holder of the naked legal title to the real estate without any other rights or duties is not the real party in interest and does not have the right to maintain this action upon the cause of action which it seeks to enforce herein.

(4) Finally, the question is presented as to whether the Court should have granted the plaintiff's motion to have The Leyman Corporation made a party with leave to plead.

It seems clear to us that had The Leyman Corporation been made a party, either plaintiff or defendant, to this action originally, no sound objection could have been presented. It was and is the beneficial owner and its joinder would have been justified by §§11,254 and 11,255 GC. We have found that it is an essential party. The joinder of The Leyman Corporation, either as plaintiff or defendant, would have been justified by those sections. It has the apparent, the record, the colorable title to this chose, and the fact that it is not in fact the real party in interest and cannot, for that reason, in its own right maintain this action is no sufficient answer to the query as to whether it is not a proper party.

Pleadings may be amended by adding or striking out the name of any party. Sec 11,363 GC.

By making The Leyman Corporation a party, there is no change in the cause of action. It remains the same. Bringing in The Leyman Corporation to assert it does not change the cause. The plaintiff thought it had the right to assert it and account for the proceeds. Procedural rules deny to it that right. There is a defect in parties. The presence of The Leyman Corporation will cure that defect.

In **Van Camp v McCulley, 89 Oh St., 1,** the Court held as stated in the syllabus, that:

"1. Where a creditor of an insolvent corporation enters suit in behalf of himself and other creditors against C. and other stockholders, to compel payment into court of unpaid subscriptions to capital stock of the corporation, C. demurs on the ground that plaintiff has not reduced his claim to judgment and exhausted his legal remedies, and, pending the demurrer, a trustee of the insolvent corporation is appointed in bankruptcy. Held: The court has power in furtherance of justice to substitute the trustee as plaintiff with leave to file an amended petition and bring in another subscriber as a defendant."

And at page 6 of the opinion, the Court said:

"The fallacy in the plaintiff in error's argument lies in confusion of terms. The defect of party plaintiff affects not the cause of action, but the right of action. The right of action is in the real party in interest. The cause of action is the wrong which the real party in interest suffers. It shows a subtantive or positive right which that wrong has violated. The right of action is an adjective or remedial right to invoke the court for redress of the wrong. Amending the title to the action does not in any way affect the substance of the cause of action."

In **Douglas v The Daniel Bros. Coal Co., 135 Oh St., 641,** a widow, thinking she had been appointed administratrix of her husband's estate, filed suit for wrongfully causing his death. She was mistaken about her appointment, but did not discover her mistake until the statute of limitations had run. She then was appointed administratrix and filed an amended petition, in which she alleged the facts about her appointment, and adopted and ratified her acts in commencing the action. The right of the Court to permit this amendment was challenged, but the Court sustained it. The Court cited and approved Van Camp v McCulley, supra, and at page 647, said:

"The mere substitution of parties plaintiff, without substantial or material changes from the claims of the original petition, does not of itself constitute setting forth a new cause of action in the amended petition. As was said in the opinion in the case of Van Camp v McCulley, Trustee, supra: 'The mere change of the name of the plaintiff in the title would not of course change the cause of action.'

"In the instant case the cause of action set up in the petition is in no way affected by the corrections contained in the amendment. The amendment corrects the allegations of the partition with respect to plaintiff's capacity to sue and relates to the right of action as contradistinguished from the cause of action. A right of action is remedial, while a cause of action is substantive, and an amendment of the former does not affect the substance of the latter."

So, we are of the opinion that the Court had power to permit The Leyman Corporation to be made a party to this action. Should that power have been exercised?

As we have already pointed out, there is no change in the alleged cause of action. The trial of the issues had been completed. Great labor and expense had been devoted to the trial. We can think of no right of which the defendants would be deprived by permitting The Leyman Corporation to be made a party. None has been suggested. On the contrary, it would assure the defendants of a finality to the litigation at the earliest moment.

In 39 Am. Jur., 967, it is said:

"It has been held an abuse of discretion to refuse to amend by substituting a plaintiff, where the real cause of action is not changed and the statute of limitations has expired, so that the substituted plaintiff could not bring an original action."

The trial court incorporated its opinion of April 19th, 1939, into the journal entry overruling the plaintiff's motion to have The Leyman Corporation made a party to the action. An examination of that opinion discloses that the Court determined that as a matter of law there was no power in the Court to order The Leyman Corporation made a party to the action. Therefore, as the Court viewed the motions, they did not call for the exercise of judicial discretion to determine whether the ends of justice would be furthered by granting or overruling the motion—and of course, the ruling was not based on a finding that justice would be promoted by a denial of the prayer that The Leyman Corporation be made a party.

Many of the procedural aspects of Bryan, Admr., v Inspiration Consolidated Copper Co., 23 Ariz., 541 (205 Pac. 904) resemble this case. Under the laws of Arizona, the administrator had no right to maintain an action for wrongfully causing death, under the circumstances of that case. The administrator filed this action under mistake on that subject. Upon discovery of the mistake, he moved that the parties who had the right be made parties. The Court overruled the motion, and the administrator and the party entitled appealed. On this subject the Court, at page 557 said:

"It is urged that amendments rest in the sound discretion of the court, and that, unless that discretion is shown to have been abused, the denial of the right to amend will not be disturbed. Generaly speaking, this is, of course, the rule.

But in this case it is not difficult to infer that the refusal of the amendment was not in the exercise of discretion, but based upon a supposed want of power to allow it, and if the court did undertake to exercise discretionary power, then in a legal sense that discretion was abused when it refused to permit an amendment introducing the proper parties, Unless the case is outside of the rules stated in the authorities cited with respect to the allowance of amendments, the court should, in the absence of some showing of prejudice, allow the amendment and substitution of plaintiffs sought; and, unless some reason be shown by the rights of the opposite party are prejudiced, sound discretion requires that the amendment be allowed."

See, also: **Bauer v Heaton, 68 Oh App., 181.**

For the reason that the trial Court erred in over-ruling the motions to make The Leyman Corporation a party with leave to plead, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, P. J., & HILDEBRANT, J., concur

## ON REHEARING.

Decided May 15, 1944.

## OPINION

By MATTHEWS, J.:

The application for rehearing was granted because the Court desired further argument on the appellees' contention, that as we had concluded that the appellant did not bear the relation of real party in interest to the cause of action sued upon, it necessarily followed that it could not be prejudiced by the judgment.

However, it should be remembered that while the appellant has conceded that as between it and The Leyman Corporation it would be obliged to account to the latter for the proceeds of any recovery, it has not admitted that it was not the real party in interest within the meaning of that phrase as used in §11,241 GC. It is true that the Common Pleas Court found it was not the real party in interest and rendered judgment against it for that reason, but it was no more bound to consider that finding as a finality than the appellees are bound to consider as conclusive the decision of this Court that

the trial court erred in overruling the motion to have The Leyman Corporation made a party to the action. Each is entitled to exhaust the remedies provided by the law by seeking reviews on appeal.

By virtue of the trial court's holding that the plaintiff was not the real party in interest and its refusal to order The Leyman Corporation made a party, a judgment in favor of the defendants against the plaintiff dismissing the action at its costs was entered—and this, notwithstanding the fact that it is admitted that the plaintiff was the holder of the legal title.

If the Court erred in entering this judgment it was prejudicial to the plaintiff appellant for two reasons—it dismissed its action and also adjudged the costs against it. That resulted from the overruling of the motions to make The Leyman Corporation a party to the action which deprived the plaintiff of a trial upon the merits of the cause of action.

Under §11,624 GC, a judgment against the defendants in this sort of a case would carry the costs as a matter of law in favor of the successful litigant—original plaintiff or intervenor, or both. It is settled law in Ohio that a refusal to award nominal damages is not prejudicial error in and of itself, but if there is a right to recover costs, then it is prejudicial and ground for reversal. **Hill v Butler, 6 Oh St., 207; Smith v Weed Sewing Machine Co., 26 Oh St., 562; Chambers v Frazier, 29 Oh St., 362; McCoy v Anderson, 15 Abs. 385;** Coker v Richey, 22 A. L. R. (Or.) 745, at 752.

So we conclude that in any view, the plaintiff was a proper party to this action, had a real interest in the judgment that might be, and in fact was rendered, and was prejudiced by the terms of the judgment.

(2) The contention is made that The Leyman Corporation if any one, was prejudiced by the refusal of the Court to order it made a party, and that it and it alone had the right to appeal from the judgment.

While there are special statutes authorizing an appeal by persons other than parties, the general statute §12223-5 GC makes no provision for the filing of a notice of appeal by any one other than a party to the action. The Leyman Corporation not having been made a party certainly does not come within the designation of party. Of course, if it had been made a party, it could have appealed. In 2 O. Jur., 189, it is stated:

"Generally speaking, the parties to a proceeding in error who were parties to the action in which the judgment or or-

der sought to be reversed was made, and their privies, are entitled to review the judgment or order in a proper case. Although no substantial right of the plaintiffs in error is affected by the order if they are parties to the action below. they may file a petition in error as for example to protect officers of the county who although not parties to the action will be affected by the order made.

"It has been said that there must be a judgment or order against one in order to entitle him to maintain an error proceeding. The mere fact that the judgment may affect the interests of one not a party to the action does not entitle him to prosecute error proceedings if there is no judgment against him. While the statute allows an appeal to be taken in an appealable case by a party, or other person directly affected, there is no other provision as to error cases. A stranger to the record cannot, without some showing of interest, take a proceeding in error."

We believe the law of Ohio is that the right of appeal is limited to parties to the action in the absence of a specific statute enlarging the class, and that this class is governed by the general rule, and that, therefore, The Leyman Corporation had no right to appeal from this judgment by which it is not bound, nor from the order overruling its motion to be made a party. It seems to us that this case differs from **State, ex rel. v Guckenberger, 138 Oh St., 444,** which was an action in mandamus on the relation of a taxpayer and the application to intervene was by another taxpayer who would have been bound by whatever judgment was rendered. That fact gave finality to the order denying him the right to intervene. What was said by the Court on page 448 must be construed with that in mind. Certainly, The Leyman Corporation would not be bound by any judgment rendered in this case.

In 4 C. J. S., 214, the rule is stated that:

"No appeal lies from interlocutory or discretionary orders ruling on applications for intervention unless the order falls within a statutory exception. The petitioner denied intervention may appeal from such an order if it finally disposes of his rights or prevents determination and enforcement thereof."

And, at page 232:

"No appeal lies from orders or judgments on pleas in intervention or dismisal thereof unless they finally dispose of the case or come within the terms of statutes permitting the same."

(3) The anomaly that would be presented by the judgment of a court becoming a finality, for lack of a competent appellant, was discussed in Bryan v Inspiration C. C. Co., 23 Ariz., 541. The statute of limitations had run against a new action. The argument was made in that case, as here, that the plaintiff was incapable of securing a review of an order refusing to make a new party to the action who had the entire title to the case, the plaintiff having no title, legal or equitable, but having instituted the action under an honest mistake, as we must presume was done here. At page 546, the Court made this comment:

"The result of this would be the peculiar situation that a final judgment has been rendered, exonerating the defendant from liability, and finally disposing of any claim that might be made on account of the death of the deceased, a judgment which in its nature is subject to review by this court, and yet no one is in a position to seek such review. While the position of the appellee may appeal to the severely logical, yet the argument made must yield to the practical application of the statutes allowing the right of appeal."

However, assuming that The Leyman Corporation had the right to appeal, that did not deprive The H. S. Leyman Company of an equal right, and in this case it would seem that there was greater reason for an appeal by The H. S. Leyman Company, unless it is a fact that the statute of limitations would be a defense to an action instituted by The Leyman Corporation. The H. S. Leyman Company was faced with the immediate prospect of a judgment being rendered against it, unless title to the cause of action sued upon could be strengthened by bringing in the beneficial owner. Upon the refusal to permit intervention, what was a prospect, became a reality in the judgment of dismissal at its costs.

We adhere to the conclusion heretofore announced.

ROSS, P. J., & HILDEBRANT, J., concur.